IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF COURT
ATLANTA DIVISION

| | |
|---|---|
| JAMES ALTON BEACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIVIL ACTION FILE |
| v. | ) NO.: |
| | ) |
| THE GUARDIAN LIFE | ) Jury Trial Demanded |
| INSURANCE COMPANY OF, | ) |
| AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff James Alton Beach, by and through counsel, brings this action for the purpose of obtaining relief from Defendant The Guardian Life Insurance Company of America's termination of Long-Term Disability benefits due under an employee benefits plan and other violations of the Employee Retirement Income Security Act of 1974:

## Jurisdiction & Venue

1. This Court has jurisdiction pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), over which this Court possesses original jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C.

§ 1331.

2. The ERISA statute, 29 U.S.C. § 1133, and the Department of Labor regulations, 29 C.F.R. § 2560.503-1, provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted, and this matter is now properly before this Court for judicial review.

3. Venue is proper in the Northern District of Georgia because Defendant is authorized to transact business in the State of Georgia, the applicable benefit policies were administered in this District, the breach took place in this District, and the Defendant may be found in this district. 29 U.S.C. § 1132(e)(2).

## Parties

4. Plaintiff, James Alton Beach (hereinafter "Plaintiff"), is currently a resident of Fulton County, Georgia.

5. Defendant The Guardian Life Insurance Company of America ("Guardian") was, and is, a business entity authorized to transact business in the State of Georgia and may be served with process at Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

Defendant Guardian is the underwriter of the Long-Term Disability ("LTD") group Plan #00337886 (the "Plan") issued to Plaintiff's former employer American Computer Experience, Inc. ("ACE"), and is the party obligated to pay benefits under the Plan.

6. The Plan does not have a discretionary clause.

7. Plaintiff was employed by ACE as its Chief Executive Officer and Chairman of the Board.

8. ACE maintained the Plan for the benefit of its employees.

9. LTD benefits due under the Plan were funded by the Policy.

10. Plaintiff is a participant or beneficiary of the Plan that provides LTD benefits under the Plan.

11. At all relevant times, the Plan stated that Guardian was required to pay Plaintiff a monthly LTD benefit if he met the Plan's definition of "disability."

12. Under the Plan:

**"Disability"** means, solely due to your sickness or injury:

   (1) you are completely unable to perform the major duties of your *regular occupation* on a full-time basis; and

   (2) your *current monthly earnings*, if any, are less than 80% of your *indexed prior monthly earnings*.

13. Under the Plan, while an employee is disabled, he or she can engage in: (1) any other occupation full or part-time; (ii) some, but not all, of the major duties or his or her regular occupation full or part-time; or (iii) all of the major duties of his or her regular occupation part-time.

3

14. Under the Plan, **Regular Occupation** means: "your occupation as performed in the general labor market in the national economy. When determining the duties of your regular occupation we use both the job description provided for you by your employer as well as the duties of that occupation shown in the most recent version of the Dictionary of Occupational Titles, published by the U.S. Department of Labor."

15. Plaintiff ceased work due to his disability on November 1, 2000, while covered under the Plan.

16. Guardian repeatedly acknowledged that the cause of Plaintiff's disability is Crohn's Disease and Guillain-Barré Syndrome.

17. Plaintiff has been under the regular care of one or more doctors for the cause of his disability, since the cause was determined.

18. Plaintiff has been under the regular care of at least one doctor for the cause of his disability, since he first made a claim for benefits under the Plan.

19. Upon the submittal of a claim, Guardian determined, upon review, that Plaintiff was disabled under the Plan and commenced making monthly payments to Plaintiff under the Plan of $5000.00 per month.

20. Guardian monthly paid benefits to Plaintiff from the commencement of the claim but informed him by letter on May 20, 2021 that he would no longer receive benefits because he was no longer was eligible for benefits under the Plan.

21. Guardian's last benefit payment to Plaintiff was dated April 28, 2021.

22. However, Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

23. Plaintiff continued to be eligible for benefits under the Plan on April 29, 2021.

24. Plaintiff continues to be eligible for benefits under the Plan until present.

25. Plaintiff timely and thoroughly appealed Guardian's decision to terminate benefits to Plaintiff.

26. In connection with the appeal, Plaintiff caused to be submitted a January 31, 2022 letter from his long-term treating physician, Michael S. Levine, M.D., which described Plaintiff's then-current condition is such a way that meets the definition of "Disability" under the Plan (the "Levine Letter").

27. In connection with the appeal, Barry N. Straus, M.D. submitted a response to an inquiry from Guardian that described Plaintiff's condition from April

16, 2021 through January 5, 2022 in such a way that meets the definition of "Disability" under the Plan (the "Straus Letter").

28. Plaintiff submitted written evidence from at least one of his long-term treating physicians stating that he was totally disabled.

29. Plaintiff submitted all other information required by Guardian during the appeals process.

30. Plaintiff diligently undertook to provide all other information requested by Guardian during the appeals process.

31. No contradictory evidence was submitted by Plaintiff contrary to his physicians' conclusions.

32. Guardian obtained no reliable evidence that Plaintiff was no longer eligible for benefits under the Plan.

33. Guardian obtained no evidence from any long-term physicians of Plaintiff contrary to the conclusions of Dr. Levine or Dr. Straus as stated, respectively in the Levine Letter and the Straus Letter.

34. Michael S. Levine, M.D. is an award-winning gastroenterologist.

35. Barry Straus, M.D. is a member in good standing of the State Bar of Georgia as a lawyer, in addition to his medical credentials.

36. Even though Guardian had possession of the Levine Letter before it communicated the denial of Plaintiff's appeal to Plaintiff, Guardian did not take the Levine Letter into account when it internally closed the appeal adverse to Plaintiff.

37. In its internal decision-making process, Guardian concluded that the Straus Letter was not objective evidence.

38. In its internal decision-making process, Guardian concluded that Plaintiff could perform all the major duties of the Chairman or Chief Executive Officer on a full-time basis (the "Ability Decision").

39. In its internal decision-making process, Guardian relied to some degree on information that ACE was not a small business when Plaintiff first became disabled.

40. In its internal decision-making process, Guardian relied to some degree on information that Plaintiff sold ACE for $200,000,000.

41. Before making the Ability Decision, Guardian never asked Plaintiff how much money ACE was sold for.

42. Before making the Ability Decision, Guardian never asked Plaintiff if ACE was sold by him.

43. Before making the Ability Decision, Guardian never interviewed Plaintiff regarding the size of ACE.

44. Guardian possessed credible information when it made the Ability Decision that on some days Plaintiff spent hours in the bathroom due to difficulties of Crohn's disease.

45. Guardian possessed credible information when it made the Ability Decision that Plaintiff generally was necessitated to address 10-15 bowel movements a day.

46. Before making the Ability Decision, Guardian possessed credible information that Plaintiff had blood in his stool on a regular basis when it made the Ability Decision.

47. Before making the Ability Decision, Guardian possessed credible information that Plaintiff regularly was impacted by lack of sleep resulting from pain and gastrointestinal issues he encountered.

48. Before making the Ability Decision, Guardian never had any basis to conclude that Plaintiff stopped having blood in his stool.

49. Before making the Ability Decision, Guardian never had any basis to conclude that Plaintiff's sleep patterns had returned to a healthy one.

50. There is a dearth of published information on the overlapping experience in humans of Crohn's Disease and Guillain-Barré syndrome.

51. When Plaintiff was last treated with Remicade for Crohn's Disease, he experienced a reaction sufficient to immediately halt treatment with Remicade.

52. When Plaintiff was treated with Humira in November 2019 for Crohn's Disease, on the first dose, his leg experienced edema so painful that he could not walk for hours.

53. When Plaintiff was treated with Entyvio for Crohn's Disease, his vision became clouded, resulting in him having to park the car he was driving under an overpass on highway I-75 for hours while waiting for the impact of the drug to pass.

54. Before the Ability Decision was made, Plaintiff suffered from frequent and multiple kidney stones as a sequela of Crohn's Disease.

55. When Plaintiff restricted his eating and drinking in order to curtail diarrhea during performance of a work-related activity before the Ability Decision was made, such as delivering a presentation, he suffered escalated Guillain-Barré consequential impacts.

56. X-Rays of Plaintiff from before Guardian made the Ability Decision, show areas in Plaintiff's neck and spine that exhibit the characteristics of pain producing points.

57. Before the Ability Decision was made, Plaintiff decided not to take a pain drug named Belbuca prescribed by a doctor Guardian induced him to visit because Dr. Straus recommended a better drug.

58. Dr. Levine saw Plaintiff in late 2021 even though he made no office note record of the visit.

59. Guardian never asked Plaintiff if he had seen Dr. Levine in late 2021, but instead relied on the lack of office notes from Dr. Levine's office dated in late 2021, in making the Ability Decision.

60. Guardian possessed credible information when it made the Ability Decision that on a frequently occurring basis, Plaintiff's hands and/or legs were painful due to Guillain-Barré syndrome.

61. The Ability Decision was made, in part, on the list of work-related activities shown on the internet, which Plaintiff had undertaken over the 20-year period of time he had been receiving LTD benefits from Guardian.

62. Over the period of time Plaintiff had been receiving LTD benefits from Guardian, Plaintiff regularly had been providing information to Guardian regarding his work-related activities and the income derived from them.

63. For the avoidance of Guardian's file being peppered with ticky tac information, Barbara or a similarly situated employee of Guardian informed

Plaintiff that he needed only to supply summary information to Guardian in the form of tax returns of smaller amounts of money obtained by Plaintiff on a sporadic basis derived from work-related activities, especially if the funds received did not approach a sum that would affect whether Guardian would be required to pay full monthly benefits in any particular month.

64. The Ability Decision was communicated to Plaintiff even while Guardian possessed and had read the Levine Letter and the Straus Letter.

65. On February 19, 2022, Guardian wrote a letter to Plaintiff stating that his appeal had been denied because Plaintiff was no longer had Disability as defined by the Plan (the "February 19, 2022 Letter").

66. The February 19, 2022 Letter stated that Plaintiff was no longer eligible for benefits under the Plan.

67. In the February 19, 2022 Letter which concluded that Plaintiff no longer had Disability as defined by the Plan while citing Michael S. Levine M.D.'s January 31, 2022 letter to Guardian, Guardian implicitly communicated that Dr. Levine was undertaking to commit insurance fraud when he submitted his letter to Guardian.

68. In the February 19, 2022 Letter which concluded that Plaintiff no longer had Disability as defined by the Plan while citing Barry Status M.D., Esq.'s response to Guardian's inquiry on January 5, 2022, Guardian implicitly

11

communicated that Dr. Straus was undertaking to commit insurance fraud when he submitted his response to Guardian.

69. The February 19, 2022 Letter confirmed Plaintiff had exhausted his administrative remedies and has a right to bring a lawsuit under ERISA § 502(a) to challenge the denial of his benefits.

70. The February 19, 2022 Letter also stated that Plaintiff's time to bring legal action expired on February 19, 2022.

71. The February 19, 2022 Letter also stated that Plaintiff's time to bring legal action expired on the day the February 19, 2022 Letter was mailed.

72. Plaintiff still had Disability as defined by the Plan on April 28, 2021.

73. Plaintiff was still eligible for benefits under the Plan on April 28, 2021.

74. Plaintiff met all criteria for long-term disability benefits under the Plan on April 28, 2021.

75. Plaintiff met all criteria for long-term disability benefits under the Plan on February 19, 2022.

76. Guardian's statement in the February 19, 2022 Letter that the time for Plaintiff to bring legal action to contest the cessation of long-term disability benefits under the Plan expired on February 19, 2022 was false.

77. By letter dated January 25, 2023, Plaintiff made demand on Guardian to pay unpaid past long-term benefits under the Plan and, also, to resume payment of long-term disability benefits under the Plan (the "Demand Letter").

78. As of the date of the Demand Letter, Guardian owed Plaintiff $100,000 in unpaid long-term disability benefits.

79. In the Demand letter, Plaintiff warned Guardian that he would potentially seek bad faith remedies under O.C.G.A. § 33-4-6 to the extent applicable.

80. The Demand Letter was delivered to Guardian no later than January 27, 2023.

81. Time passed after the Demand Letter was delivered.

82. As of the filing of this Complaint, more than sixty (60) days has passed since January 27, 2023.

83. This action is timely brought.

**COUNT I:**
**Recovery of Plan Benefits**
**Pursuant to 29 U.S.C. §**
**1132(a)(1)(B)**

84. Plaintiff re-alleges, as if fully set forth herein, each and every prior allegation contained in paragraphs 1 to 83 contained above, and further alleges the following against Defendant Guardian:

85. Under the terms of the Plan, Guardian agreed to provide Plaintiff with long-term disability benefits in the event that Plaintiff became disabled as defined by the Plan.

86. Plaintiff is disabled and entitled to benefits under the terms of the Plan.

87. Guardian wrongfully terminated benefits due under the terms of the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan.

88. The decision to deny benefits was incorrect under the terms of the Plan.

89. The decision to deny benefits was a breach of the Plan.

90. When the decision to deny benefits was communicated in the February 19, 2022 Letter Guardian favored unreliable information concerning the size and sale of Plaintiff's former business, ACE, over existing current information that directly contradicted a basis for Guardian to deny benefits.

91. The rationale of the February 19, 2022 Letter denying benefits was contrary to substantial evidence in the Guardian's record and Plaintiff's Disability was supported by reliable evidence possessed by Guardian.

92. As a direct and proximate result of the aforementioned conduct of the Guardian in terminating benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which he would have been entitled to under the Plan through the current date.

93. As a direct and proximate result of the aforementioned conduct of the Guardian in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages due under the Plan, plus interest allowed by law and other damages, for a total amount to be determined.

94. Plaintiff is entitled to recovery of his attorneys' fees and costs of this action.

## Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court grant the following relief:

(A) A finding in favor of Plaintiff and against Defendant Guardian;

(B) Damages in the amount equal to the disability income benefits to which he was entitled through date of judgment, pursuant to 29 U.S.C. § 1132(a)(1)(B);

(C) Prejudgment and post-judgment interest;

(D) An Order requiring the Plan or appropriate Plan fiduciary to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan;

(E) Plaintiff's reasonable attorney fees and costs; and

(F) Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issue so triable under Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted, this 15<u>th</u> day of May, 2023.

                                     */s/ Henry M. Quillian III*
                                     Henry M. Quillian III, Esq.
                                     Georgia State Bar No. 003160
                                     hquillian@taylorenglish.com
                                     Robbin L. Wilder, Esq.
                                     Georgia State Bar No. 220973

                                     *Counsel for Plaintiff James Alton Beach*

TAYOR ENGLISH DUMA, LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
(770) 434-6868 (Main)
(678) 336-7184 (Direct)
(770) 434-7376 (Fax)